# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| **ELLEN MULDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **15-11377-FDS** |
| | ) | |
| **KOHL'S DEPARTMENT STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER ON MOTION TO
## DISMISS, MOTION TO AMEND, AND MOTION TO CERTIFY

**SAYLOR, J.**

This is a putative class action arising out of allegedly deceptive and misleading labeling and marketing of merchandise by Kohl's Department Stores, Inc. The amended complaint alleges that Kohl's has engaged in false advertising of its merchandise by listing fictional "comparison prices" at which it had never previously sold that merchandise and that were "intentionally selected so that Kohl's could advertise phantom markdowns." (Am. Compl. ¶ 5). Plaintiff Ellen Mulder purchased two items that were listed with a comparison price at the Kohl's store in Hingham, Massachusetts. She has brought this action alleging fraud, breach of contract, unjust enrichment, and violation of Mass. Gen. Laws ch. 93A, 940 Mass. Code Regs. § 6.01, and the Federal Trade Commission Act.

Kohl's has moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. After submitting three rounds of written briefing in opposition and participating in oral argument, plaintiff has moved to amend

the complaint.  Plaintiff has also filed a motion to certify a question of law to the Massachusetts Supreme Judicial Court.

Because the complaint does not allege a legally cognizable injury, and for the other reasons set forth below, defendant's motion to dismiss will be granted, and plaintiff's motions for leave to amend and to certify questions to the Massachusetts Supreme Judicial Court will be denied.

## I.      Background

### A.      Factual Background

Unless otherwise indicated, the facts below are presented as stated in the amended complaint.

Kohl's Department Stores, Inc. is a Wisconsin corporation with a principal place of business in Menomonee, Wisconsin.  (Am. Compl. ¶ 12).  It operates a chain of department stores, including more than twenty stores in Massachusetts.  (*Id.* ¶ 13).

The amended complaint alleges that Kohl's listed false "comparison prices" both on the price tags of its products and on LED displays throughout the store.  (*Id.* ¶¶ 3-4).  Specifically, it alleges that "Kohl's misrepresented the existence, nature, and amount of price discounts on [its] products" by falsely "purporting to offer specific dollar discounts from its own former retail prices . . . or manufacturer's suggested retail prices" when, in fact, the listed prices were "fabricated [and] inflated, and d[id] not represent the true prices for which products were being sold at Kohl's."  (*Id.* ¶ 2).  It specifically alleges that the comparison prices listed on the price tags were "fictional amounts intentionally selected so that Kohl's could advertise phantom markdowns."  (*Id.* ¶ 5).  It further alleges that "[t]he Kohl's pricing scheme was prominently displayed on all products available for sale at Kohl's stores in Massachusetts."  (*Id.* ¶ 8).

On November 3, 2014, Ellen Mulder went to the Kohl's store located in Hingham, Massachusetts.  (*Id.* ¶ 23).  The complaint alleges that she observed at least two price tags that displayed comparison prices; one represented the manufacturer's suggested retail price as having been $55 and another displayed an undefined comparison price of $26.  (*Id.*; Am. Compl. Exs. B, C).  The products were listed as being on sale for $29.99 and $17.99, respectively.  (Am. Compl. Ex. A).  She paid a total of $40.78 to purchase both items as a result of an additional 15 per cent discount.  (*Id.*).

According to the complaint, Mulder "was induced to purchase" both items because she was "[e]nticed by the idea of paying significantly less than the comparison pricing price."  (Am. Compl. ¶ 23).  The amended complaint alleges that Mulder "would not have made such purchase, or would not have paid the amount she did, but for Kohl's false representations of the former price of the items she purchased."  (*Id.* ¶ 10).  According to the amended complaint, "Kohl's never intended [to], nor did it ever, sell the items at the represented comparison price."  (*Id.* ¶ 24).

### B.      **Procedural Background**

Mulder initially filed a complaint in Plymouth County Superior Court on November 20, 2014.  (St. Ct. Rec. at 2).  She filed an amended complaint on February 19, 2015.  (*Id.*).  Kohl's removed the action to this Court on March 27, 2015.

Kohl's has moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted.  Mulder has filed a motion to amend the complaint, and a motion to certify a question of law to the Massachusetts Supreme Judicial Court.

## II.     **Motion to Dismiss**

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and

give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

Ordinarily, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  For that reason, "great specificity is ordinarily not required to survive a Rule 12(b)(6) motion."  *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992).  However, under Fed. R. Civ. P. 9(b), in cases "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The purposes of that requirement are (1) to give defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations.  *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003) (quoting *New*

*England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)); *see also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980).  Under the Rule 9(b) heightened pleading requirement, a complaint must state the time, place, and content of the alleged false or fraudulent representations to state a claim for fraud.  *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006).  The Rule 9(b) pleading requirement applies both to general claims of fraud and also to "associated claims where the core allegations effectively charge fraud."  *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009); *Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement.").

### A.    Count Four:  Violation of CMR and FTCA

Count Four alleges a claim for violations of the Code of Massachusetts Regulations and the Federal Trade Commission Act.  Specifically, Count Four alleges that Kohl's "violated and continues to violate 940 [Mass. Code Regs.] 6[.]01" and "violated and continues to violate the [Federal Trade Commission Act], 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233."  Count Five alleges a violation of Mass. Gen. Laws. ch. 93A that is predicated on violation of the underlying regulations.  The Federal Trade Commission Act does not provide for a private cause of action.  *See Marini v. Dragadosusa*, 2012 WL 4023674, at *1 (D. Mass. Sept. 11, 2012) ("[T]he Federal Trade Commission Act . . . does not provide a cause of action by private persons such as the plaintiff."  (citing *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1002 (D.C. Cir. 1973))).  Likewise, there is no private right of action under the Code of Massachusetts Regulations.  As a result, Count Four will be dismissed for failure to state a claim upon which relief can be granted.

B.     **Count Five:  Violation of Chapter 93A**

Chapter 93A of the Massachusetts General Laws prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a).  Conduct is "unfair or deceptive" if it falls "within any recognized or established common law or statutory concept of unfairness." *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994).  Pursuant to 940 Mass. Code Regs. 3.16, "[a]n act or practice is a violation of [Mass. Gen. Laws] Ch. 93A, s.2 if: . . . (3) [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth . . . ; or (4) [i]t violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of [Mass. Gen. Laws ch.] 93A, s.2."  The Supreme Judicial Court has interpreted the "regulation as being bound by the scope of [Mass. Gen. Laws ch.] 93A, § 2(a).  In other words, under 940 Mass. Code Regs. § 3.16(3) a violation of a law or regulation . . . will be a violation of c[h]. 93A, § 2(a), only if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce." *Klairmont v. Gainsboro Restaurant*, 465 Mass. 165, 174 (2013).  "[W]hether the particular violation or violations qualify as unfair or deceptive conduct is best discerned from the circumstances of each case." *Id.* (quoting *Kattar v. Demoulas*, 433 Mass. 1, 14 (2000)) (internal quotation marks omitted).

1.     **Code of Massachusetts Regulations**

Title 940 of the Code of Massachusetts Regulations establishes rules governing, among other things, retail advertising and price comparisons.  Under Section 3.02(2), "[n]o statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product

6

offered . . . ."   940 Mass. Code Regs. 3.02(2).   Under Section 6.01, an advertisement is defined

as including a "representation . . . printed on or contained in any tag or label which is attached to

or accompanies any product offered for sale."

Section 6.03(2) provides that "[s]ellers shall not use advertisements which are untrue,

misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell."

940 Mass. Code Regs. 6.03(2).   The regulations define two specific types of "unfair or

deceptive" acts that are potentially relevant here.   Under Section 6.05(2),

> It is an unfair or deceptive act for a seller to state or imply that it is offering any
> savings as to any product by making a direct or indirect price comparison, unless
> the seller clearly and conspicuously describes the basis for the price comparison.
> Notwithstanding the foregoing, a seller may claim a savings or compare a higher
> and a lower price without disclosing the basis for the comparison if the seller is
> comparing to its own former price.

940 Mass. Code Regs. 6.05(2).   Under Section 6.05(3),

> [i]t is an unfair or deceptive act for a seller to compare its current price with its
> former price for any product, unless such former price is a bona fide, actual price
> at which the seller offered the product to the public, openly and in good faith for a
> reasonably substantial period of time in the recent past.   The burden shall be on
> the seller to show that its former price is not an inflated or exaggerated price, and
> that the seller offered the product to the public at the former price openly and in
> good faith.

940 Mass. Code Regs. 6.05(3).   A price comparison is defined as "any advertisement . . . of a

seller's current price for a product with any other price or representation of value, whether or not

such other price is actually stated in the advertisement."   940 Mass. Code Regs. 6.01.

### 2.    Federal Trade Commission Act

Pursuant to the Federal Trade Commission Act, "[u]nfair methods of competition in or

affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are

hereby declared unlawful."   15 U.S.C. § 45(a).   It is an "unfair or deceptive act or practice" to

disseminate "any false advertisement . . . (2) [b]y any means, for the purpose of inducing, or

which is likely to induce, directly or indirectly, the purchase in or having an effect upon

commerce, of food, drugs, devices, services, or cosmetics." 15 U.S.C. § 52(a), (b).

The Federal Trade Commission's Guides Against Deceptive Pricing distinguishes

between "former price comparisons," "retail price comparisons," and "comparable value

comparisons." *See* 16 C.F.R. §§ 233.1, 233.2; *Rubenstein v. Neiman Marcus Group LLC*, 2015

WL 1841254, at *5 (C.D. Cal. March 2, 2015). According to the section on "former price

comparisons,"

> One of the most commonly used forms of bargain advertising is to offer a
> reduction from the advertiser's own former price for an article. If the former
> price is the actual bona fide price at which the article was offered to the public on
> a regular basis for a reasonably substantial period of time, it provides a legitimate
> basis for the advertising of a price comparison. Where the former price is
> genuine, the bargain being advertised is a true one. If, on the other hand, the
> former price being advertised is not bona fide but fictitious—for example, where
> an artificial, inflated price was established for the purpose of enabling the
> subsequent offer of a large reduction—the "bargain" being advertised is a false
> one; the purchaser is not receiving the unusual value he expects. In such a case,
> the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a). The section on "retail price comparisons" identifies "[a]nother commonly

used form of bargain advertising" as one where the seller offers "goods at prices lower than those

being charged by others for the same merchandise in the advertiser's trade area (the area in

which he does business)." 16 C.F.R. § 233.2(a). According to the guidelines,

> This may be done either on a temporary or a permanent basis, but in either case
> the advertised higher price must be based upon fact, and not be fictitious or
> misleading. Whenever an advertiser represents that he is selling below the prices
> being charged in his area for a particular article, he should be reasonably certain
> that the higher price he advertises does not appreciably exceed the price at which
> substantial sales of the article are being made in the area—that is, a sufficient
> number of sales so that a consumer would consider a reduction from the price to
> represent a genuine bargain or saving.

*Id.* "Comparable value comparisons" are described as "[a] closely related form of bargain

advertising" that offers "a reduction from the prices being charged either by the advertiser or by

others in the advertiser's trade area for other merchandise of like grade and quality—in other words, comparable or competing merchandise—to that being advertised."  16 C.F.R. § 233.2(c). According to the guidelines,

> Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area.  The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area.

*Id.*  Other courts have interpreted price tags with "Compared To" language as displaying a "comparable value comparison" as opposed to a "former price comparison."  *See, e.g.*, *Rubenstein*, 2015 WL 1841254, at *6; *Branca v. Nordstrom, Inc.*, 2015 WL 1841231, at *8 (S.D. Cal. March 19, 2015).

## 3.   Alleged Unfair or Deceptive Acts

As noted, Mulder purchased two items—one whose tag displayed a comparison price of $26 and for which she paid $17.99, and a second whose tag displayed a manufacturer's suggested retail price of $55 and for which she paid $29.99.  (Am. Compl. ¶ 3, Exs. A, B, C).[1] The price tags in the record do not provide any explanation of the basis for the price comparisons, and the amended complaint alleges that "Kohl's never intended [to], nor did it ever, sell the items at the represented comparison price."  (Am. Compl. ¶ 24).  The amended complaint also alleges that the MSRP contained on the second item's price tag was "fabricated." (Am. Compl. ¶ 2).  It therefore appears that the amended complaint sufficiently states a claim for violations of the Code of Massachusetts Regulations.  *See Shaulis v. Nordstrom, Inc.*, 2015 WL 4886080, at *6 (D. Mass. Aug. 14, 2015).  Such violations would also constitute unfair or

---

[1] Mulder ultimately paid a total of $40.78 as a result of an additional 15 per cent discount on her purchase. (Am. Compl. Ex. A).

deceptive conduct within the meaning of Chapter 93A.  *See id.* at *6 (citing *Klairmont*, 465 Mass. at 174-75).

The amended complaint also purports to state a claim based on an alleged violation of the Federal Trade Commission Act.  Because the amended complaint adequately alleges an unfair or deceptive act under Chapter 93A by sufficiently alleging a violation of the Code of Massachusetts Regulations, the Court need not determine whether it has also adequately alleged an unfair or deceptive act in violation of the Federal Trade Commission Act.

### 4.  <u>Alleged Injury</u>

The amended complaint alleges that "Kohl's has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct."  (Am. Compl. ¶ 65).  It further alleges that "Kohl's has improperly obtained money from [p]laintiff" and "requests that this court cause Kohl's to restore this money to [p]laintiff . . ., and to enjoin Kohl's from continuing to violate the [Code of Massachusetts Regulations] as discussed herein and/or from violating the [Code of Massachusetts Regulations] in the future."  (*Id.* ¶ 66).

There does not appear to be a causation issue:  the second amended complaint alleges that the unfair or deceptive act or practice (the allegedly manipulative price marking) caused an identifiable harm (a purchase that otherwise would not have been made).  The question instead is whether that alleged harm is sufficient to sustain a claim under Chapter 93A.

"Chapter 93A provides a cause of action for a plaintiff who 'has been injured.' . . . by 'unfair or deceptive acts or practices.'"  *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010) (citing Mass Gen. Laws ch. 93A, §§ 9(1), 2(a)).  The jurisprudence as to what constitutes an "injury" under Chapter 93A is, to say the least, somewhat muddled.  *See Shaulis*,

2015 WL 4886080, at *7-8 (reviewing Massachusetts cases); *Ferreira v. Sterling Jewelers, Inc.*,

2015 WL 5437086, at *3 (D. Mass. Sept. 15, 2015) ("From the vantage of the federal courts, the

jurisprudence on cognizable injuries under chapter 93A leaves much to be desired by way of

clarity.").  The First Circuit observed in *Rule* that the decisions of the Supreme Judicial Court

had left it "uncertain whether and when something less than conventional economic injury will

suffice" under Chapter 93A.  607 F.3d at 253.  Nonetheless, the court went on to note that "the

most recent SJC cases on point appear to have returned to the notion that injury under chapter

93A means economic injury in the traditional sense; and, if . . . [there are] exceptions, it is for the

SJC to identify and define them."  *Id.* at 255.

  The alleged harm, if any, suffered by Mulder here is not a "non-economic" injury; she

does not claim, for example, that she suffered emotional distress as a result of the transaction.  If

it is anything, therefore, it is some form of "economic" injury.  However, the injury that Mulder

claims to have suffered is not an "injury" in any traditional sense of the word.  She paid $40.78

for merchandise on the alleged belief "that she was getting a significant discount on her

purchase."  (Am. Compl. ¶ 10).  But it appears that she paid $40.78 for items that were, in fact,

worth $40.78.  The fact that plaintiff may have been manipulated into purchasing the items

because she believed she was getting a bargain does not necessarily mean she suffered economic

harm.  *See Shaulis*, 2015 WL 4886080, at *9.[2]

  As in *Shaulis*, it is superficially appealing to conclude that plaintiff has suffered a

cognizable "injury" under the law.  The requirements of misrepresentation and causation have

been met:  plaintiff alleges that she was unfairly induced into a making a purchase that she would

---

[2] *See also Ferreira*, 2015 WL 5437086, at *5 ("The critical inquiries here are whether Ms. Ferreira has offered sufficient evidence that she was led to believe she was purchasing something other than what was sold to her, and whether what she received was actually worth less—even if not quantifiably so—than what she thought she was buying.") (citation omitted).

not have made, but for the misrepresentation.  And the transaction was arguably to her detriment; she would rather have her money—which she could use to purchase other things—than the items.

The question, however, is whether that amounts to a legally cognizable "injury" within the meaning of Chapter 93A.  Based on the allegations in the complaint, it does not.  *See id.* at *10.  The law requires more than misrepresentation, causation, and a potential remedy:  it requires a legally cognizable "injury."  There does not appear to be such an injury here.  *See Ferreira*, 2015 WL 5437086, at *7 ("The record supports nothing more than the conclusion that Ms. Ferreira now thinks she was somehow getting less of a bargain than she did.").  Plaintiff has not suffered an economic injury; among other things, she has suffered no loss, and there is no sum of money that could be awarded to her that could "compensate" her without providing a windfall. [3]  It therefore appears that the complaint fails to plead a cause of action under Chapter 93A, based on the absence of a cognizable injury.  Accordingly, the motion to dismiss Count Five will be granted.

### C.    Counts One, Two, and Three

Counts One, Two, and Three allege common-law claims for fraud, breach of contract, and unjust enrichment.  The complaint for all three counts appears to rely in substantial part on violations of the Code of Massachusetts Regulations.

### 1.    Count One:  Fraud

Count One alleges common-law fraud.  To establish fraud or fraudulent misrepresentation, a plaintiff "must show that the defendant [1] 'made a false representation of a

---

[3] The Court could arguably order injunctive relief, requiring Kohl's to accept an exchange in which plaintiff returns the items and Kohl's refunds the $40.78.  It does not follow, however, that plaintiff has suffered an economic injury; again, she has suffered no actual loss.

material fact [2] with knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, and [4] that the plaintiff reasonably relied upon the representation as true and acted upon it [5] to [her] damage.'" *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458 (2002)).

Here, the principal problem with the fraud claim is that the complaint fails to allege an actionable injury caused by the alleged false statement. It is well-settled that a common-law action for fraud requires a pecuniary loss. *See, e.g.*, Restatement (Second) of Torts § 525. Having not alleged a pecuniary loss, the fraud claim cannot survive. *See Shaulis*, 2015 WL 4886080, at *11. Because the complaint does not adequately allege common-law fraud, Count One will be dismissed.

### 2.     Count Two:  Breach of Contract

Count Two alleges a claim for breach of contract. To prove a breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted); *accord Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir. 1999).

Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-72 (1991).

The implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *UNO Restaurants*, 441 Mass. at

385-86; *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  However, "[a] party may breach the covenant of good faith and fair dealing . . . without breaching the express term of th[e] contract.  Otherwise, the implied covenant would be a mere redundancy."  *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (quoting *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)).  "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of the performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance."  *Speakman*, 367 F. Supp. 2d at 132.

The amended complaint appears to allege that in executing a contract of sale with Mulder, Kohl's violated the implied covenant of good faith and fair dealing by including "contract terms [that were] materially deceptive and misleading or outright lies."  (Am. Compl. ¶ 56).

However, the amended complaint does not allege that the terms of the contract itself were breached.  It does not allege that the merchandise purchased by Mulder was worth less than what she paid for it, or that she did not receive the benefit of her bargain.  "By charging this agreed price in exchange for ownership of the clothing, [Kohl]'s gave the plaintiff[] the benefit of [her] bargain."  *See Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (finding that consumers failed to allege breach of contract where retailer sold them clothing that was advertised as discounted from suggested prices).

In sum, the amended complaint does not state an action for breach of contract, or breach of the implied covenant of good faith and fair dealing.  Accordingly, Count Two will be dismissed.

### 3.      Count Three:  Unjust Enrichment

Count Three alleges a claim for unjust enrichment.  Unjust enrichment is defined as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005).  To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

The amended complaint alleges that "Kohl's has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct."  (Am. Compl. ¶ 60).  However, that conclusory allegation is not sufficient to state a claim for unjust enrichment.  There is no allegation that Mulder did not receive the merchandise she attempted to purchase or that she paid more than its true value—in other words, there is no allegation that Kohl's retained a benefit that would be inequitable without payment for its value.  Accordingly, Count Three will be dismissed.

## III.    Motion to Amend Complaint

Rule 15 of the Federal Rules of Civil Procedure addresses amendments to pleadings. Under Rule 15(a), a party may amend a "pleading" without leave of court in certain relatively narrow circumstances.[4]  "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when

---

[4]  A party may amend a pleading once as a matter of course within "21 days after serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).

justice so requires." Fed. R. Civ. P. 15(a)(2).  Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In determining whether to grant a motion to amend, the Court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).

In substance, Mulder seeks to add new allegations that she was induced to travel to Kohl's by false advertising, and that she suffered an economic injury because of the consumption of gasoline and depreciation of her automobile arising out of that travel.  Considering the totality of the circumstances, Mulder's motion to amend her complaint will be denied both because of undue delay and because her proposed amendments to the complaint would be futile.

## A.      Undue Delay

In the First Circuit, it is well-established that "undue delay in moving to amend, even standing alone, may be . . . an adequate reason [to deny a motion for leave to amend]."  *In re Lombardo*, 755 F.3d 1, 3 (1st Cir. 2014) (citing *Foman*, 371 U.S. at 182; *Acosta–Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 51-52 (1st Cir. 1998)); *accord Perez v. Hospital Damas, Inc.*, 769 F.3d 800, 802 (1st Cir. 2014); *Calderón–Serra v. Wilmington Trust Co.*, 715 F.3d 14, 20 (1st Cir. 2013) ("Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend.").  The First Circuit has "also held that in assessing whether delay is undue, a court will take account of what the movant 'knew or should have known and what he did or should have done.'"  *In re Lombardo*, 755 F.3d at 3-4 (quoting *Invest Almaz v. Temple–Inland Forest Prods. Corp.*, 243 F.3d 57, 72 (1st Cir. 2001)).  Delays for

periods as short as four months and less than three months have been found to constitute undue delay. *See Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (four-month delay); *Kay v. N.H. Dem. Party*, 821 F.2d 31, 34 (1st Cir. 1987) (less than three-month delay).

After Kohl's filed its motion to dismiss, Mulder did not seek to amend her complaint. Instead, she filed an opposition to the motion, sought (and was granted) leave to file a sur-reply, opposed the motion again at oral argument, and then submitted a third written memorandum in opposition after argument was heard. Mulder freely admits that she filed her motion to amend to rectify deficiencies identified in this Court's unfavorable ruling in *Shaulis v. Nordstrom*, a case in which the plaintiff—who is also represented by Mulder's counsel—filed substantially identical allegations of false advertising against a different retailer. (Pl. Mem. ¶¶ 5, 13).

Nonetheless, Mulder was "put on notice of the deficiencies in the complaint by the motion to dismiss. If [she] had something relevant to add, [she] should have moved to add it then." *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015). She presumably had the additional information at her disposal, or could have obtained it with reasonable diligence, at all relevant times. Under the circumstances, Mulder has not provided a valid reason for her neglect and delay, and her motion will therefore be denied.

### B.    Futility

Allowing Mulder to amend her complaint would also be futile. As noted, the proposed second amended complaint seeks to add additional allegations to attempt to cure the deficiencies in the first amended complaint identified by the Court in *Shaulis v. Nordstrom*, 2015 WL 4886080 (D. Mass. Aug. 14, 2015). In substance, Mulder's new allegations are that she suffered an "economic injury" because she spent time and money travelling to Kohl's. (*See* Prop. Sec. Am. Compl. ¶ 22).

The primary shortcoming of Mulder's new factual allegations is a lack of causation between the alleged injury and the misrepresentations upon which she relies.  Mulder did not, and indeed could not have, seen the alleged misrepresentations until she was already present in the store.  The price tags, therefore, logically could not have caused her to travel to Kohl's. Instead, Mulder attempts to address her causation problem by alleging that she was "deceived by Kohl's advertising in general, including newspaper ads," and that "but for the reputation that Kohl's developed as a result of its false advertising of 'amazing prices,'" she would not have undergone the expense of travelling to Kohl's.  (*Id.* at ¶¶ 22, 31).

However, under Fed. R. Civ. P. 9(b), in cases "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Under the 9(b) heightened pleading requirement, a complaint must state the time, place, and content of the alleged false or fraudulent representations to state a claim for fraud.  *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006).  The Rule 9(b) pleading requirement applies both to general claims of fraud and also to "associated claims where the core allegations effectively charge fraud."  *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009); *Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, at *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement.").

Again, the issue is not whether Kohl's allegedly made misrepresentations in its in-store displays and tags; the complaint adequately alleges such a violation.  Instead, it is whether the complaint sufficiently alleges that Kohl's deceived her into going to the store at all.  As set forth in the amended complaint, Mulder's allegations that she was induced to travel to Kohl's by its "advertising in general" and claims of "amazing prices" fall well short of meeting Rule 9's

requirements for alleging fraudulent representations.[5]  Those alleged facts, therefore, are legally insufficient to establish causation for the new injury she now alleges, and to allow her to amend the complaint to include them would be futile.

## IV.   **Motion to Certify**

Mulder has also asked the Court to certify the question of whether she suffered an "economic injury" to the Massachusetts Supreme Judicial Court.  Federal courts can certify questions to the SJC in cases where there is no controlling precedent and where the questions may be determinative of the pending cause of action.  *In re Engage, Inc.*, 544 F.3d 50, 52 (1st Cir. 2008).  The fact that a legal issue is close or difficult, however, is not normally enough to warrant certification.  *Id.* at 57.  Under the circumstances, Mulder's motion to certify will be denied.

## V.   **Conclusion**

For the foregoing reasons,

1)  the motion to dismiss by defendant Kohl's is GRANTED as to all counts;

2)  Mulder's motion to amend the complaint is DENIED; and

3)  Mulder's motion to certify questions to the Massachusetts Supreme Judicial Court is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor IV
Dated: February 1, 2016                United States District Judge

---

[5]  Furthermore, as Kohl's notes, a claim of "amazing prices" in most circumstances is likely non-actionable puffery because, standing alone, such an advertisement does not make an explicit promise or guarantee.  *See Millen Indus., Inc. v. Flexo-Accessories Co., Inc.*, 5 F. Supp. 2d 72, 74 (1998) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1218 (1st Cir. 1996)).